# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| CITY OF SPENCER, IOWA,<br><br>    Plaintiff,<br><br>vs.<br><br>ISONOVA TECHNOLOGIES, LLC,<br><br>    Defendant. | No. 23-CV-4061-CJW-KEM<br><br>**REPORT AND RECOMMENDATION** |

The court previously sua sponte issued an order requiring the parties to submit briefing on the issue of subject-matter jurisdiction. Doc. 11.[1] **I recommend finding that diversity jurisdiction exists.**

## I. BACKGROUND

Plaintiff, the City of Spencer, Iowa, initiated this action in state court, alleging a state-law nuisance claim based on the foul odor emitted by Defendant IsoNova Technologies, LLC's food processing plant. Doc. 2. The City seeks money damages as well as injunctive relief prohibiting "the continued emission of noxious and offensive odors at the Isonova plant." *Id.*

IsoNova removed to this court, alleging subject-matter jurisdiction based on diversity. Doc. 1. The City is an Iowa municipality and citizen of Iowa. Docs. 1, 2. IsoNova is a limited liability company with two members, Symrise Holding, Inc., a Delaware corporation with its principal place of business in New Jersey; and American

---

[1] *Sadler v. Green Tree Serv., LLC*, 466 F.3d 623, 625 (8th Cir. 2006) ("Lack of subject-matter jurisdiction of a lawsuit cannot be waived by the parties—or ignored by the courts—at any stage of the litigation.").

Dehydrated Foods, LLC, a limited liability company wholly owned by Symrise. Doc. 15. IsoNova is thus a citizen of Delaware and New Jersey.[2]

The complaint does not specify the amount of money damages sought. Doc. 2. In its notice of removal, IsoNova stated that the City's request for injunctive relief would require IsoNova to close its Spencer facility. Doc. 1. IsoNova stated that that the cost for it to comply with the injunction exceeded $75,000 and satisfied the amount-in-controversy requirement. *Id.* In my prior order, I noted "the unclear state of the law" (particularly in the Eighth Circuit) regarding whether the amount in controversy can be determined by the cost to the defendant to comply with an injunction, or whether it must be determined solely based on the "plaintiff's viewpoint." Doc. 11. I requested additional briefing on the applicability of the "either viewpoint" rule to determine the amount in controversy. *Id.*

IsoNova submitted briefing as requested. Doc. 14. IsoNova also provided additional facts on the City's potential damages. *Id.* The City's complaint alleges that the noxious odors from IsoNova's plant "impact the use and operation of the City's Stolley Park." Doc. 2. Stolley Park is a 129.6 acre park containing a lake (and canoe launch and fishing dock), a trail around the lake, and assorted benches, picnic tables, and grills. Doc. 14-3 at 54, 103-04, 113-14. IsoNova suggested that the City obtains revenues exceeding $75,000 from the public's use of Stolley Park, relying on the fact that Stolley Park offers recreational trails, fishing, and picnic tables; and data from the Bureau of Labor Statistics showing that in 2019, Spencer residents spent $245,000 on hunting and fishing equipment and $2.35 million on "fees and admissions related to entertainment and recreation." Doc. 14-4, 14-3 at 22. It does not appear to the court that the City charges the public to use Stolley Park, nor is there any evidence of special events in Stolley Park through which the City obtains (for example) permitting revenues.

---

[2] *See GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004).

IsoNova also argues that "[t]he maintenance of Spencer's Stolley Park, as well as the proposals for further development" of Spencer's parks, "are each well in excess of $75,000." Doc. 14. IsoNova relies on the fact that the City's Parks Department budget exceeded $750,000 annually from mid-2016 through mid-2020 and that more than $200,000 of that budget went toward maintenance, supplies, and services. Doc. 14-2. But this is the City's budget for all City parks, not just Stolley Park—"The Parks Department maintains 16 parks, encompassing over 500 acres of land, 3 boulevard areas, 11 miles of recreational trails, 12 tennis courts, 11 athletic fields[,] and 7 playgrounds." *Id.* A September 2020 "master plan" by the City's Parks Department does note, however, that a short-to-mid-term goal (in the next six years) includes adding camping cabins to Stolley Park at a cost of $15,000 per camping space. Doc. 14-3 at 71, 82.

IsoNova also argues that "over the past several years, City employees, including the City's attorney and the Planning Director, have engaged in various activities to address the alleged odor issue, including fielding complaints, working with the City's attorney, communicating with IsoNova and IsoNova's counsel, and ultimately filing two Municipal actions and the case that is now before this Court." Doc. 14. IsoNova further points to evidence that the City's contracted legal services from mid-2016 through mid-2020 amounted to around $50,000 a year. Doc. 14-5. But according to the complaint, the offensive odor from IsoNova's plant did not begin until October 2021 (Doc. 2), and the City filed the municipal actions in 2023;[3] thus, these legal fees from 2020 and earlier have nothing to do with IsoNova. IsoNova argues that the City's damages include the salaries of its employees who spent time dealing with the odor issue; but the odor issue likely took up only a small portion of their time (meaning only a small portion of their salaries could potentially be recoverable as damages).

---

[3] *See City of Spencer v. IsoNova Technologies, LLC*, Nos. SPCICV035494, SPCICV035584 (Iowa Dist. Ct., Clay Cnty. July 18 & Aug. 30, 2023).

3

IsoNova also notes that fourteen new construction homes are for sale near IsoNova's plant and that "[a]nnual property taxes on each home range from approximately $2,000 to approximately $2,600." Doc. 14-1. This appears to be the market value of the homes despite the odor; there is no allegation that the homes would be worth more if injunctive relief were granted.

Finally, IsoNova provides additional information on its costs to comply with the City's request for an injunction. IsoNova contends it has "begun the process of commissioning a new permanent odor remediation system," the costs of which exceed $75,000. Doc. 14. It also notes it has installed a temporary odor remediation system "to bridge the three-month construction and installation period of the permanent system," at a cost of $29,000. *Id.* IsoNova further argues that if the odor remediation system does not improve the smell, it will be "forced to shutter operations of the 32-employee Spencer facility," and its damages will "be in the range of tens of millions of dollars on an annual basis" based on lost profits and the costs to cease production and sell assets and real property. *Id.*

## II. DISCUSSION

The parties are citizens of different states for purposes of diversity jurisdiction—the City is an Iowa citizen, and IsoNova is a Delaware and New Jersey citizen. The remaining issue is whether "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."[4]

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."[5] "[A] defendant's notice of removal need include only a

---

[4] **28 U.S.C. § 1332(a)**.

[5] ***Dart Cherokee Basin Operating Co., LLC v. Owens***, 574 U.S. 81, 87 (2014).

plausible allegation that the amount in controversy exceeds the jurisdictional threshold."[6] "If the plaintiff contests the defendant's allegation, . . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."[7] "Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation."[8] Here, neither the court nor the City challenged IsoNova's statement in the notice of removal that its cost to comply with the injunction would exceed $75,000 (and IsoNova has now provided evidence of that fact); rather, the court questioned whether the cost to IsoNova could be considered as a matter of law.

There is no question that if the City's money damages exceed $75,000, then the amount-in-controversy requirement is met. Under Iowa law, "[w]hen the nuisance is permanent," the plaintiff may recover both "the diminution in the market value of the property," as well as special damages based on "'[t]he personal inconvenience, annoyance, and discomfort to a property owner . . . caused by a nuisance.'"[9] This latter category of damages is "not subject to any precise rule for ascertaining damages because these damages are not susceptible of exact measurement."[10] Instead, as with damages for pain and suffering in personal-injury cases, "the factfinder must use its sound judgment based upon an impartial consideration of the evidence."[11] In nuisance cases involving a foul odor, at least two juries in Iowa have awarded more than $75,000 in

---

[6] *Id.* at 89.

[7] *Id.* at 88.

[8] *Id.* at 89.

[9] *Weinhold v. Wolff*, 555 N.W.2d 454, 465 (Iowa 1996) (quoting **58 Am. Jur. 2d** *Nuisances* **§ 296** (1989)).

[10] *Id.*

[11] *Id.*

5

damages to plaintiffs who live nearby, and the Iowa Court of Appeals has upheld one of these awards (in an unpublished decision) against an excessive-damages challenge by the defendant.[12] Thus, even though I do not find that the City obtains revenue from the public's use of Stolley Park, I recommend finding that the City's damages based on loss of enjoyment and diminution in market value could exceed $75,000.[13] Therefore, I recommend finding that IsoNova has plausibly alleged the amount in controversy exceeds $75,000.

Unlike the City's nebulous loss-of-enjoyment damages, IsoNova has offered concrete evidence that its costs to abate the odor nuisance (in compliance with the City's requested injunction) would exceed $75,000. I previously requested briefing on whether IsoNova's costs can be considered in determining the amount in controversy, noting:

---

[12] *See* **McIlrath v. Prestage Farms of Iowa, L.L.C.**, No. 15-1599, 2016 WL 6902328, at *1-2, *8-9 (Iowa Ct. App. Nov. 23, 2016) (when plaintiff testified that bad odor from hog farm occurred thirty to fifty percent of the time and affected her ability to open windows, sit outside and drink coffee, and have her grandchildren over to play outside, court affirmed jury award of $100,000 for loss of past use and enjoyment, $300,000 for loss of future use and enjoyment, and $125,000 for diminution in market value), *overruled on other grounds by* **Garrison v. New Fashion Pork LLP**, 977 N.W.2d 67 (Iowa 2022); **Gacke v. Pork Xtra, L.L.C.**, 684 N.W.2d 168, 171, 185 (Iowa 2004) (when hog farm caused "frequent and significant noxious odors" in the four years since it began operations, noting jury awarded $50,000 in diminution of market value of property and $46,500 for loss of past enjoyment; and further noting that because new trial was required due to evidentiary issues, jury on remand should be instructed on damages based on loss of future enjoyment until nuisance was abated); *cf.* **Weinhold**, 555 N.W.2d at 466 (when plaintiff testified smell from hog farm was unpleasant fifty days of the year and almost intolerable twenty-five days of the year, and trial court awarded $45,000 in damages for past loss of enjoyment, the Iowa Supreme Court held plaintiff was entitled to damages for future loss of enjoyment but found $45,000 sufficient "to compensate [plaintiff] for all damages of this sort—past, present, and future"; and remanded for determination of damages based on diminution in market value).

[13] **Leflar v. Target Corp.**, 57 F.4th 600, 603 (8th Cir. 2023) ("[I]f . . . the case *might* be worth more than [the amount in controversy] (excluding interest and costs), 'then it belongs in federal court.'" (cleaned up) (quoting **Pirozzi v. Massage Envy Franchising, LLC**, 938 F.3d 981, 984 (8th Cir. 2019))).

6

> When measuring the amount in controversy, normally, the amount to be gained by the plaintiff is the same as the cost to the defendant (as when the plaintiff seeks money damages to be paid by the defendant).
>> It is sometimes the case, however, notably in suits for an injunction, or to abate a nuisance, or for other forms of specific relief, that the benefit of the action to the plaintiff will have a different value than the burden imposed on the defendant should relief be granted. So the critical question that is presented—which value should represent the amount in controversy for jurisdictional amount purposes and how should it be calculated?
>
> Under the "plaintiff-viewpoint" rule, courts determine the amount in controversy based solely on "the benefit of the action to the plaintiff," while under the "either viewpoint" rule, courts may consider the cost to the defendant. *Federal Practice and Procedure* notes that this is a murky issue, with some courts seeming to follow the plaintiff-viewpoint rule, while others following the either-viewpoint rule.

Doc. 11.

In recent cases, the Eighth Circuit has declined to weigh in on whether the amount in controversy may be determined based on the defendant's viewpoint.[14] The Eighth Circuit did recently hold, however—without addressing the "plaintiff's viewpoint" or

---

[14] *Lizama v. Victoria's Secret Stores, LLC*, 36 F.4th 762, 765–66 (8th Cir. 2022) ("The parties debate [in this CAFA case] whether the amount in controversy should be measured only from the plaintiffs' perspective . . . or whether a district court may determine the amount from either party's point of view, and thus may consider the amount from the defendant's perspective—*i.e.*, the total potential cost to the defendant if the plaintiffs prevail. We need not resolve that issue here . . . ." (citations omitted)); *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017) ("We need not resolve the issue of whether courts should apply the plaintiffs' viewpoint rule or the either viewpoint rule when determining the amount in controversy under CAFA . . . ."); *Usery v. Anadarko Petrol. Corp.*, 606 F.3d 1017, 1018-19 (8th Cir. 2010) ("We have held repeatedly that in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue. . . . We are aware that there are cases in other circuits that hold that when the costs to a defendant of losing a case exceed the benefit that a plaintiff would gain by winning it, the amount in controversy can sometimes be measured by the defendant's costs. We have never endorsed this rule, but it is not necessary to address the matter . . . ." (citations omitted)).

7

"either viewpoint" rules—that the district court erred in remanding a CAFA[15] case seeking only injunctive relief without considering evidence that it would cost defendant $7.5 million to comply with the requested injunction.[16] CAFA expressly permits consideration of the aggregate amount in controversy, considering all of the class member's claims.

Many older Eighth Circuit cases employ language "seem[ing] to support the 'plaintiff's viewpoint' rule exclusively," but these cases do not "directly address[] the question of evaluating equitable relief in the removal context" involving a single plaintiff without class claims.[17] For example, in *Massachusetts State Pharmacy Association v. Federal Prescription Service, Inc.*, a putative class action of retail pharmacies in Massachusetts filed suit seeking to enjoin the defendant pharmacy from soliciting business in Massachusetts by mail.[18] The Eighth Circuit held:

> The amount in controversy is tested by the value of the suit's intended benefit to the plaintiff. This is the so-called "plaintiff's viewpoint" rule. There is some authority for the proposition that the amount in controversy is valued by the "thing to be accomplished by the action" as to either the plaintiff or the defendant, whichever is the higher. . . . In light of *Snyder v. Harris*, 394 U.S. 332 (1969), holding that only plaintiffs who have a common and undivided interest in a single title or right may aggregate their claims to reach the jurisdictional amount, we are of the view that the "plaintiff's viewpoint" rule is the only valid rule. In a class action where the aggregate amount of damages to the class exceeds [the amount in controversy], the value of the thing to be accomplished by the action

---

[15] Class Action Fairness Act of 2005.

[16] *Leflar*, 57 F.4th at 605; *see also* **Adams v. Am. Fam. Mut. Ins. Co.**, 981 F. Supp. 2d 837, 849 (S.D. Iowa 2013) (in determining amount in controversy for CAFA case, holding "that costs incurred by a defendant in complying with an injunction or declaratory judgment . . . constitute appropriate considerations in determining the amount in controversy").

[17] **Bergstrom v. Burlington N. R.R. Co.**, 895 F. Supp. 257, 260 (D.N.D. 1995) (collecting cases).

[18] 431 F.2d 130, 130 (8th Cir. 1970).

> (judgment for the aggregate amount) as to the defendant exceeds the jurisdictional amount. The Court in *Snyder* does not recognize the presence of the jurisdictional amount in that situation. The holding can only be interpreted as precluding the valuation of the amount in controversy from the defendant's viewpoint. To hold otherwise would in effect permit aggregation of claims contrary to the teaching in *Snyder*.[19]

The court held the amount in controversy did not exceed $10,000 (as required for diversity jurisdiction at the time), despite evidence that the defendant's gross sales in Massachusetts for the last five years was $135,000, because no plaintiff pharmacy had shown it lost more than $10,000 in business because of the defendant's competition.[20]

Outside the class action context, at least one district court in the Eighth Circuit has held "that it is proper to consider the cost to a defendant [to comply with an injunction] in determining the amount in controversy on removal."[21] At least some other circuits have held the same.[22] In addition, in cases more than a century old, both the Supreme Court and the Eighth Circuit have held that in nuisance cases, "the want of a sufficient amount of damage having been sustained to give the Federal Courts jurisdiction, will not

---

[19] *Id.* at 132 & n.1 (citation omitted).

[20] *Id.* at 132-33.

[21] *Bergstrom*, 895 F. Supp. at 262 (holding amount in controversy exceeded $50,000 when plaintiff sought $29,000 in money damages and injunctive relief requiring defendant to build a culvert that would cost $30,000).

[22] *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560-61 (6th Cir. 2010) (finding it "patently suspect" that the "value of the requested injunctive relief" to plaintiff, though "difficult to quantify," was less than $75,000, and ultimately holding amount in controversy exceeded $75,000 based on defendant's costs to comply with injunction by completing "significant remedial measures or complete destruction of the properties" constituting a nuisance); *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 391, 395 (7th Cir. 1979). ("applying the either viewpoint rule" and holding amount in controversy in removed case exceeded $10,000 when plaintiffs stipulated their damages were less than $10,000, but the cost to defendant to remove its pipeline from plaintiff's land in compliance with the requested injunctive relief would exceed $10,000).

defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern."[23]

The diversity statute refers to the "matter in controversy." As a matter of common sense, in a nuisance action seeking injunctive relief to abate the nuisance, how much it would cost defendant to abate the nuisance appears to be "in controversy." Here, IsoNova has provided evidence that the odor remediation system needed to abate the nuisance costs more than $75,000; and that the damage to its business of closing the plant (thereby abating the nuisance) would also exceed $75,000. I recommend finding that

---

[23] ***Mississippi & M.R. Co. v. Ward***, 67 U.S. 485, 492 (1862); *accord* ***Am. Smelting & Ref. Co. v. Godfrey***, 158 F. 225, 228 (8th Cir. 1907) ("The rule, as we understand it, is that when an injunction is asked against the erection and maintenance of a nuisance, it is not important to discuss what kind of damage would result if the nuisance were operated, but rather what the cost of the alleged nuisance will be.").

In *Mississippi & M.R. Co.*, the owner of a steamboat damaged by a bridge spanning the Mississippi River brought a nuisance claim seeking removal of the bridge (but no money damages). 67 U.S. at 491-92. The Supreme Court held that the amount-in-controversy requirement was met but ultimately dismissed the case after finding the Iowa federal court only had jurisdiction to order removal of the bridge on the Iowa side of the river, and that part of the bridge did not amount to a nuisance. *Id.* at 492, 495-96. The Seventh Circuit has indicated that the Supreme Court's language in *Mississippi & M.R. Co.* is cryptic, and "value of the object" "could mean the value of the plaintiff's steamboat business, the cost to the defendant of removing the bridge, the value of the bridge itself, or the value of the plaintiff's right to be free of the obstruction." *McCarty*, 595 F.2d at 392.

In *American Smelting*, farmers brought a nuisance claim against the owners of a smelter that released sulfur dioxide into the atmosphere and caused sulfuric acid to rain down on the farmers' crops and livestock, killing them. 158 F. at 227-28. The trial court entered an injunction setting a limit on the amount of sulfur dioxide defendants could release into the air. *Id.* at 228. On appeal, defendants argued "the real matter in controversy is the damage claimed to be suffered by [the farmers], and the value of [defendants'] right to operate their smelters does not constitute the object of the suit." *Id.* The Eighth Circuit held that the amount in controversy need not be determined based on "the privilege of being free from the nuisance of smoke from the smelters." *Id.* The court held the amount-in-controversy requirement was satisfied because defendants "admitted that the smelters . . . are worth more than the jurisdictional amount" and "that the value of the right or opportunity to continue to run the smelters . . . is worth more than the jurisdictional amount." *Id.* Thus, even if *Mississippi & M.R. Co.* can be interpreted different ways (as found by the Seventh Circuit), *American Smelting* confirms that the defendant's cost to comply with the injunction can be considered.

10

IsoNova's cost to comply with the injunction in this nuisance action may be considered when determining the amount in controversy.

Accordingly, I recommend finding that the amount in controversy exceeds $75,000, exclusive of interests and costs.

### III. CONCLUSION

I recommend finding that diversity jurisdiction exists.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[24] Failure to object to the Report and Recommendation may waive the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[25]

**DATED** on February 28, 2024.

*Kelly K.E. Mahoney* (signature)
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[24] **Fed. R. Civ. P. 72**.

[25] *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).